**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 95-10106

(Summary Calendar)
_____


JULIAN ARTHUR RANDALL, JR.,

Plaintiff-Appellant,

versus

RANDY McLEOD, Warden, Clements Unit,
TDCJ, ET AL.,

Defendants-Appellees,


_____

Appeal from the United States District Court
For the Northern District of Texas
2:92 CV 259
_____

September 15, 1995

Before SMITH, EMILIO M. GARZA, and PARKER, Circuit Judges.

PER CURIAM:[*]

Julian Randall, Jr., an inmate of the Texas Department of Criminal Justice's Institutional Division ("TDCJ-ID"), appeals the district court's dismissal, under 28 U.S.C. § 1915(d) (1988), of his pro se, in forma pauperis civil rights suit. We affirm the district court's dismissal.

I

_____

[*] Local Rule 47.5.1 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

Randall filed a civil rights complaint under 42 U.S.C. § 1983 (1988), alleging that various prison officials had violated his constitutional rights.  In his complaint, Randall alleged that after several inmates fought with prison guards in the mess hall, the prison officials placed the population of his building in lockdown.  Randall claimed that the lockdown was punitive and, therefore, that he should have received notice and a hearing before being placed in lockdown.  Randall also alleged in his complaint that prison officials delivered sack lunches to the prisoners during the lockdown, and that on two occasions the officials refused to provide Randall with a "pork-free" meal.[1]  Randall contends that the officials' failure to provide him with pork-free meals constituted cruel and unusual punishment and violated his First Amendment right to exercise his religious beliefs.  A magistrate judge dismissed both claims as frivolous under § 1915(d), and Randall appeals from the dismissal.

II

A district court may dismiss an in forma pauperis complaint under § 1915(d) if it determines that the complaint is frivolous. *Thompson v. Patteson*, 985 F.2d 202, 205 (5th Cir. 1993).  "[A] complaint is not frivolous for the purposes of § 1915(d) merely because it fails to state a claim according to the standards of Fed. R. Civ. P. 12(b)(6)." *Thompson*, 985 F.2d at 205.  A complaint is frivolous if "it lacks an arguable basis either in law or in

---

[1]  Randall claims that his religious beliefs prohibit him from contact with pork.

fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 1831-32, 104 L. Ed. 2d 338 (1989). "A complaint is legally frivolous if it is premised on an `indisputably meritless legal theory,'" *Boyd v. Biggers*, 31 F.3d 279, 281-82 (5th Cir. 1994) (quoting *Neitzke*, 490 U.S. at 327, 109 S. Ct. at 1833), and factually frivolous "if the facts alleged are `clearly baseless,' a category encompassing allegations that are `fanciful,' `fantastic,' and `delusional.'" *Denton v. Hernandez*, 504 U.S. 25, 32, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992) (quoting *Neitzke*, 490 U.S. at 325-28, 109 S. Ct. at 1831-33). We review a district court's § 1915(d) dismissal of an in forma pauperis complaint for abuse of discretion. *See Denton*, 504 U.S. at 34, 112 S. Ct. at 1734; *Boyd*, 31 F.3d at 282.

A

Randall contends on appeal that the magistrate judge erroneously dismissed as frivolous his claim that prison officials should have given him notice and a hearing before placing him in lockdown. The magistrate judge held that Randall's claim is legally frivolous because Randall was placed in lockdown for administrative rather than punitive reasons.

"In the context of prisoners placed in more restrictive confinement, a protected liberty interest can arise in one of two ways: when the restriction is imposed for punitive (as opposed to an administrative) purpose, and when a state regulation creates a liberty interest." *Giovanni v. Lynn*, 48 F.3d 908, 911 (5th Cir. 1995), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. June 13,

1995) (No. 94-9846).[2]  "[T]he Supreme Court has long recognized that prison officials have the authority to transfer an inmate to more restrictive quarters for non-punitive reasons." *Mitchell v. Sheriff Dep't, Lubbock County, Tex.*, 995 F.2d 60, 63 (5th Cir. 1993); *see also Hewitt v. Helms*, 459 U.S. 460, 468, 103 S. Ct. 864, 869, 74 L. Ed. 2d 675 (1983) (holding that Due Process Clause subjects an inmate's treatment by prison authorities to judicial oversight only if such treatment falls outside the terms of the inmate's sentence, and holding that "[i]t is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"). However, "[t]he use of punitive isolation without affording due process is unacceptable and violates the 14th Amendment." *Pembroke v. Wood County, Tex.*, 981 F.2d 225, 229 (5th Cir.), *cert. denied*, ___ U.S. ___, 113 S. Ct. 2965, 125 L. Ed. 2d 665 (1993).

In his complaint, Randall alleged that his entire building was placed under lockdown because of the misconduct of three of the

---

[2]  Randall argues in his brief on appeal that the administrative directive pursuant to which the prison officials placed his building in lockdown creates a liberty interest in "not [being] placed on lockdown unless there is a major or mess [sic] disruption," and that "[t]hree inmates in a isolated incident clearly does not justify major or mess, as the [directive] specifies that particular sanction as involved in this case not be imposed."  However, in his complaint, as the magistrate judge noted, Randall "pointed to no statutes or regulations which create a liberty interest in plaintiff's retaining the same level of restrictions while the rest of the general population in his building was placed in administrative lockdown," nor did he allege "any violation of the institutional regulations which govern this kind of administrative lockdown."

building's inmates, and that he was not one of the three.[3]  We addressed claims similar to Randall's in two recent cases, and in both we held that the district court abused its discretion in dismissing as frivolous a due process claim from an inmate who had been placed in lockdown because of an incident in which the inmate was not involved.  In *Eason v. Thaler*, 14 F.3d 8 (5th Cir. 1994), we held that "[e]ven though a lockdown rarely will require more than informal review, some process arguably was due [the inmate.]" *Id.* at 9.  However, we based our holding on the fact that we had "limited information" as to the reasons for the lockdown.  *Id.*  We cited as support our decision in *Mitchell*, which also involved a due process claim that was factually very similar to Randall's.  We held in *Mitchell* that because the inmate had alleged that the lockdown was punitive in nature, and because the record was not sufficiently developed as to the reasons for the lockdown, the district court had abused its discretion in dismissing the inmate's claim as frivolous.  *Mitchell*, 995 F.2d at 63 ("Mitchell raises the non-frivolous contention))and from the record before us we cannot tell whether there is a basis for the contention))that the prison officials placed Mitchell in isolation for punitive reasons and not that he was segregated for administrative reasons.").

The present case differs from *Eason* and *Mitchell* in one important respect.  In his complaint, Randall alleged that he was

---

[3]    In his complaint, Randall stated that he "was in the dining hall on July 10, 1992, when three prisoners and two or more officers got into a fight in eight building where [Randall] is housed as close custody status and was punished for infraction committed by them."

placed in lockdown "pursuant to" TDCJ-ID's Administrative Directive 3.31 (March 7, 1991), which gives prison officials the power to order lockdowns "where necessary to suppress a major threat to the institution's safety or security." *Jones v. Cockrell*, No. 94-40188 (5th Cir. Feb. 6, 1995) (unpublished opinion). Thus, unlike the inmate in *Mitchell*, Randall has not alleged that he was placed in lockdown for punitive rather than administrative reasons. Instead, Randall contends that he was placed in lockdown for administrative reasons, but that the result was that he was punished for a fight that other inmates had with the prison guards. Thus, the confinement that Randall suffered, albeit more restrictive than confinement in the general prison population, does not implicate the Due Process Clause. *See Hewitt*, 459 U.S. at 468, 103 S. Ct. at 869 ("It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."). We therefore hold that the magistrate judge did not abuse its discretion in dismissing Randall's due process claim as frivolous under § 1915(d).

B

Randall also contends on appeal that prison officials violated his first and eighth amendment rights by refusing him a "pork-free" meal on two occasions during the lockdown. The magistrate judge held that Randall's claim was frivolous, reasoning that: (1) "[Randall's] claim concerning a failure to provide pork-free meals alleges two isolated incidents not sufficient to . . . constitute

-6-

a constitutional violation;" (2) "[Randall] has not alleged facts to show that any substantial burden was placed on his exercise of religion;" (3) "[Randall] has also alleged he had no reason to think that the guard served him the two meals with the pork in them on purpose;" and (4) "At no point has plaintiff alleged any harm to indicate that the meals were not sufficient to preserve health."

In his complaint, Randall claimed that he twice refused sack lunches brought to him during the lockdown because he believed the lunches were not pork-free. According to Randall, he informed each official that he needed a pork-free meal, but neither provided him with one. Randall contended that the officials knew or should have known that eating pork is against Randall's religious beliefs. Randall alleges in his complaint that he did not eat the meals offered him on the two occasions and, as a result, suffered hunger pains and weight loss.

Randall contends on appeal that the officials' failure to provide him with adequate food constituted cruel and unusual punishment. *See Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1083 (5th Cir. 1991) ("Because depriving a prisoner of adequate food is a form of corporal punishment, the eighth amendment imposes limits on prison officials' power to so deprive a prisoner.").

"Certainly, the Constitution does not tolerate the administrative transformance of a sentence of several years' imprisonment to one of a gulag-type death by incremental starvation." *George v. King*, 837 F.2d 705, 707 (5th Cir. 1988).

-7-

However, Randall was not starved. Even if we assume that Randall was deprived of one of his three meals on two separate days, Randall's Eighth Amendment claim is frivolous because we have held that providing inmates with only two meals a day is not necessarily unconstitutional. *See Green v. Ferrell*, 801 F.2d 765, 770-771 (5th Cir. 1986) (holding that jail could constitutionally continue serving inmates only two meals a day, given jail physician's testimony that inmates had no medical problems caused by inadequate diet, because Eighth Amendment only requires that inmates receive "`well-balanced meal[s], containing sufficient nutritional value to preserve health'" (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)).

Randall contended in his complaint that he suffered hunger pains and weight loss as a result of missing lunch on two days of the lockdown, not that the nutritional value from the meals he did receive was insufficient to preserve his health. *See Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (holding that prison officials violate inmates' Eighth Amendment rights only when officials deny inmates the minimal civilized measure of life's necessities). Thus, we hold that the magistrate judge did not abuse his discretion in dismissing Randall's Eighth Amendment claim as frivolous under § 1915(d).

C

Randall also contends on appeal that the prison officials' failure to provide him with a pork-free meal on two separate occasions violated his First Amendment right to freely exercise his

religious beliefs. The district court dismissed Randall's first amendment claim as frivolous on the grounds that (1) "[Randall] has not alleged facts to show that any substantial burden was placed on his exercise of religion," and (2) "[Randall] has also alleged he has no reason to think that the guard served him the two meals with pork in them on purpose."[4]

Restrictions on inmates' right to exercise their religious beliefs must be reasonably related to legitimate penological interests. *Muhammad v. Lynaugh*, 966 F.2d 901, 902 (5th Cir. 1992). Thus, because "[p]rison officials have a constitutional obligation to provide reasonably adequate food and, absent some legitimate penological interest preventing the accommodation of a prisoner's religious restrictions, food which is anathema to an inmate because of his religion is at least arguably inadequate." *Eason*, 14 F.3d at 10 (footnotes omitted).

We addressed a claim similar to Randall's in *Eason*, in which an inmate complained that he received only three non-pork meals during a twenty-five-day lockdown. We held in *Eason* that the district court abused its discretion in dismissing the inmate's claim as frivolous. The present case is distinguishable from *Eason*, however, because Randall was refused a pork-free meal on only two occasions during the lockdown, and not during the same

---

[4] In fact, Randall contended in his complaint that the prison official who refused to give him a pork-free meal on the first occasion was not the same official who refused on the second occasion. While Randall did state in his complaint that one of the officials told him that the meal Randall refused did not have pork in it, Randall did allege that the other official told him that there were no pork-free meals left.

day.  While Randall may have received only two "adequate" meals on two days of the lockdown, he contended in his complaint that he suffered hunger pains and weight loss as a result, not that the nutritional value from the meals he did receive was insufficient to preserve his health.  *See Green*, 801 F.2d 765, 770-71 (holding that jail could constitutionally continue serving inmates only two meals a day, given jail physician's testimony that inmates had no medical problems caused by inadequate diet, because Eighth Amendment requires only that inmates receive "`well-balanced meal[s], containing sufficient nutritional value to preserve health.'" (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)). Thus, Randall cannot show that the prison officials' failure to provide him with a pork-free meal on two separate occasions burdened his right to freely exercise his religious beliefs.  The district court did not abuse its discretion in dismissing Randall's Eighth Amendment claim as frivolous.[5]

### III

For the foregoing reasons, we AFFIRM the district court's dismissal of Randall's complaint.

---

[5]     Our reasoning parallels that of the Sixth Circuit in *Barnes v. Mann*, 12 F.3d 211, 211 (6th Cir. 1993), in which an inmate claimed "that his First Amendment right to worship the Muslim religion was violated because the defendant failed to adequately provide food substitutes for pork when pork, pork-items, or pork derivatives were served."  The Sixth Circuit held that the district court did not abuse its discretion in dismissing the claim as frivolous, stating:
> [The inmate] asserts a legal interest which does not exist.  He is not constitutionally entitled to a pork-free diet.  Defendant is only required to prepare a diet sufficient to keep prisoners in good health, or in the case of Muslims, a diet which provides them with adequate nourishment without the consumption of pork.  To the extent plaintiff may be asserting he is malnourished, he has failed to properly plead such a claim.

*Id.*