# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41640

United States Court of Appeals
Fifth Circuit

**FILED**

December 8, 2017

Lyle W. Cayce
Clerk

PAUL RICHARD BUTTS,

      Plaintiff–Appellant,

v.

MARCUS MARTIN, also known as FNU Martin; DERRIC WILSON, also known as FNU Wilson; CHERYL CRANMER-SUTTON, also known as FNU Cranmer; RICARDO MARTINEZ, also known as FNU Martinez; CHRISTOPHER BANKS, also known as FNU Banks; MICHAEL HARRIS, also known as FNU Harris; GAROD GARRISON, also known as FNU Garrison; THEODOSIA DEBRICASSART, also known as FNU DeBricassart; HARRELL WATTS, also known as FNU Watts; GERALDO MALDONADO, also known as FNU Maldonado,

      Defendants–Appellees.

Appeals from the United States District Court
for the Eastern District of Texas
USDC No. 1:12-CV-114

Before DAVIS, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:*

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-41640

Plaintiff–Appellant Paul Richard Butts, a Hasidic Jewish federal prisoner at the Federal Corrections Complex in Beaumont, Texas ("FCC Beaumont"), filed a *Bivens*[1] suit against numerous Bureau of Prisons ("BOP") employees, all of whom worked at FCC Beaumont. All his claims arise from an incident when Butts was allegedly forced to choose between eating a meal and wearing his yarmulke and the subsequent disciplinary proceedings against him. The district court granted summary judgment and dismissed Butts's claims. For the reasons set forth below, we AFFIRM in part, and REVERSE and REMAND in part.

## I. BACKGROUND

### A.     Factual Allegations

In his complaint, Butts alleged the following facts. On the evening of December 19, 2010, he went to the "chow-hall" for dinner wearing a gray knitted cap, which could be purchased from the commissary. Butts had his black yarmulke,[2] which he has worn since his arrival at FCC Beaumont, in his pocket. Once inside the chow-hall, Butts removed the gray cap, placed it in his pocket, and put on his yarmulke. One of the customs of Hasidic Judaism, the faith to which Butts adheres, requires men to keep their heads covered. Defendant Martinez, a BOP lieutenant, pointed to the yarmulke and asked: "What's that?" When Butts explained that it was his yarmulke, Martinez told him that it was not "BOP issued." Butts tried to explain that prisoners "have to supply their own" and the BOP does not supply them, but Martinez "cut [Butts] off [by] asking other rhetorical questions." According to Butts, it was "clear" that Martinez intended only to harass him. Martinez took Butts's ID

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

[2] Butts describes a yarmulke as "[a] skullcap worn by Jewish men and boys, especially those adhering to Orthodox or Conservative Judaism" and "a symbol of faith" that carries "religious significance for the wearer."

and said he would check with the FCC Beaumont chaplain "to see if they were issued." Martinez told Butts that, if Butts were lying, he would spend the night in the special housing unit ("SHU"). Martinez said that Butts would have to remove the yarmulke or leave the hall. Butts chose to leave. This was the only time Butts was questioned about his yarmulke or denied a meal because of his religious beliefs.

At lunch the next day, Butts spoke with Defendant Cheryl Cranmer–Sutton, a BOP officer who at that time was "the acting Captain." After Butts told her about the events from the night before, Cranmer–Sutton said that she would "check on [Butts's] ID." But Butts "was wanting a little more than that, at least an [apology]." Cranmer–Sutton explained that she was only concerned with getting Butts's ID back and with his ability to eat and wear his yarmulke going forward. Butts, dissatisfied with her response, mentioned that he planned on filing an administrative grievance.

At 2:30 that afternoon, a BOP officer named "Q. Jones" came to Butts's cell and asked him about a gray yarmulke, which Butts denied possessing. Jones searched the cell but found only black and white yarmulkes, which were approved under BOP regulations. Altogether, Butts's cell and property were searched three different times, and he was strip searched twice. No gray yarmulke was ever found.

Jones took Butts to Cranmer–Sutton's office where she and Martinez were waiting. Martinez asked Butts about the location of his gray yarmulke from the night before. Butts denied owning a gray yarmulke or having worn one. After the chaplain arrived, Martinez again asked Butts about the gray yarmulke's location, and Butts again denied owning a gray yarmulke. Butts's complaint asserted that it was "clear that Defendant Martinez was setting [Butts] up to be a liar." After Martinez left, Butts asked the chaplain whether

3

he had ever seen Butts wearing a gray yarmulke, and the chaplain stated that he had only seen Butts wearing a black one.

Martinez wrote an incident report and placed Butts in the SHU for "lying to staff" regarding the gray yarmulke. While Butts was in the SHU, the opened commissary items in his cell were discarded and Butts was denied access to his personal address book, stamps, and religious items—despite the fact that BOP regulations permitted these items in the SHU. He was also denied the "Holiday Package" handed out to prisoners because he was in the SHU.

The next day, Defendant Christopher Banks, a BOP officer, delivered to Butts a copy of Martinez's incident report and asked Butts whether he wanted to make a statement or request any witnesses. Butts gave a statement and requested three witnesses. Banks later told Butts, however, that Martinez had "refused to enter the information."

Defendants Garod Garrison and Theodosia Debricassart, members of the Unit Disciplinary Committee ("UDC"), subsequently held a hearing in Butts's cell in the SHU. When Butts asked about his witnesses, Garrison stated that Butts had not requested any, and the UDC refused to investigate whether Butts had requested witnesses through Banks. On December 22, 2010, the UDC found that Butts had committed the charged violation of lying to a staff member and sanctioned him, depriving him of commissary privileges for 30 days. Butts remained in the SHU for an additional week even though the UDC did not sentence him to additional SHU time.

## B.    Administrative Remedies

Butts attempted an informal resolution (BP-8).[3] In the BP-8, Butts listed as his "Specific Complaint and Requested Relief" the desire to appeal based

---

[3] As part of their motion to dismiss and for summary judgment, the Defendants filed copies of Butts's administrative grievance forms, his correspondence, and the Defendants' responses.

upon an alleged violation of his due process rights because the UDC's decision was not based on sufficient evidence. Butts noted that Martinez did not confiscate any yarmulke and that no gray yarmulke had ever been found, even though Jones had searched his cell and property. The correctional counselor instructed Butts to "start with a BP-9 on a UDC appeal."

Butts filed a request for administrative remedy (BP-9) on January 10, 2011, appealing the UDC's decision. In support of his request, Butts alleged that the UDC "did not look into any part of the [incident] report" but instead blindly accepted Martinez's word over Butts's. Butts again alleged that his due process rights were violated because there was no evidence that a gray yarmulke ever existed. And the disciplinary proceeding "has only been harrassment [sic] by Lt. Martinez of [his] religious beliefs and retaliation." He explained that he was attaching a three-page summary "[d]ue to the detail needed."

In the attached summary, Butts detailed the incidents from his perspective. Although he mentioned other individuals (including Defendant Cranmer–Sutton) over the course of the narrative, he only levied with specificity claims of wrongdoing against Martinez, including that Martinez (1) harassed Butts and violated his religious rights by forcing him to "choose between eating or setting aside his religious beliefs by removing his yarmulka [sic]," and (2) made up the gray yarmulke and used it as an "excuse" to put Butts in the SHU in retaliation for Butts's threat to "write [Martinez] up." Butts also asserted once more that his due process rights were violated because the UDC decision was not supported by sufficient evidence. Defendant Marcus Martin, the Warden at FCC Beaumont, denied the BP-9 on January 26, 2011, concluding that Butts had been afforded due process.

Butts filed a regional administrative remedy appeal (BP-10) in February 2011. In the appeal, Butts complained that Martinez had harassed him,

violated his religious rights, and then "covered" those improper actions by claiming that Butts was wearing a gray yarmulke. Butts alleged that Martinez had purposely written him up for lying, rather than for possession of unauthorized headwear, because such an issue "would only be seen as [Martinez's] word vs. [Butts's] word." Butts again maintained that Martinez had denied him dinner because of his religious beliefs and then placed him in the SHU as "punishment and retaliation because [Butts] was going to write him up."

The Regional Director, Defendant Geraldo Maldonado, ordered a rehearing on the procedural ground that Butts had not received a copy of the incident report until two days after the events in the chow-hall, and the incident report gave no reason for the delay. According to Butts, however, the UDC "decided not to have the rehearing as 'ordered,' but 'squashed it.'"

Butts was "dissatisfied with this decision" by the UDC and appealed back to Maldonado. No copy of the appeal appears in the record, but Defendant Banks alleges that Butts filed it on April 26, 2011. On May 8, 2011, Butts sent Maldonado an "[a]ttachment to [his] formal complaint against Lt. Martinez." In the attachment, Butts alleged that, on May 6, 2011, Banks had informed him that Martinez had been responsible for excluding Butts's statement and witness list from the incident report.

On May 18, 2011, citing Maldonado's failure to respond, Butts submitted to the BOP Central Office a handwritten appeal, which he characterized as a "BP-11." In this appeal, Butts complained exclusively about Martinez's actions, claiming that Martinez had violated his First Amendment and due process rights, retaliated against and defamed him falsely imprisoned him, and denied him a meal because of his religious beliefs. Butts concluded by requesting that "Martinez be fully investigated and that actions or sanctions be taken against him" under BOP regulations.

No. 15-41640

The Administrator of National Inmate Appeals, Defendant Harrell Watts, denied the appeal. Watts recounted that Butts had alleged violations of his rights by "a staff member" and had requested that "the staff member" be investigated and sanctioned. Watts found no evidence supporting Butts's allegations. Watts also noted that Martinez's incident report had already been expunged and removed from Butts's disciplinary record.

## C.    Procedural Background

On March 6, 2012, Butts filed a *Bivens* lawsuit against BOP employees. When his pro se amended complaint is liberally construed,[4] Butts claimed that Martinez had (1) violated his First Amendment rights and the Religious Freedom Restoration Act ("RFRA") by forcing him to choose between his religious beliefs and eating; (2) retaliated against him for complaining to Cranmer–Sutton; (3) violated his Fourth Amendment rights by ordering searches of his cell and strip searches of his person; (4) defamed him; (5) violated his Eighth Amendment rights by denying him a meal and falsely imprisoning him in the SHU; (6) violated his due process rights by (a) ignoring Butts's statement and request for witnesses prior to the disciplinary hearing, and (b) improperly discarding and denying him personal property; and (7) violated his equal protection rights by discriminating against him on the basis of religion. Butts also stated numerous claims against other Defendants. He sought compensatory, nominal, punitive, and exemplary damages.

The Defendants filed a motion to dismiss or, alternatively, for summary judgment. In addition to arguing the merits, the Defendants asserted that Butts had failed to exhaust his administrative remedies and that the court lacked personal jurisdiction over Defendant Watts. The district court granted

---

[4] *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989) ("*Pro se* prisoner complaints must be read in a liberal fashion . . . ." (quoting *Taylor v. Gibson*, 529 F.2d 709, 714 (5th Cir. 1976)).

dismissal and summary judgment based upon Butts's failure to exhaust his claims. In the alternative, the district court granted dismissal and summary judgment on the ground that it lacked personal jurisdiction over Watts and on the merits as to the claims against the other Defendants. Butts filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). The district court denied the motion. Butts timely filed a notice of appeal.

## II. DISCUSSION

On appeal, Butts contests the district court's denial of his Rule 59(e) motion, which requires review of both that denial and the underlying judgment. *See* Fed. R. App. P. 4(a)(4)(A)(iv); *Martinez v. Johnson*, 104 F.3d 769, 771 (5th Cir. 1997) (citing *United States v. One 1988 Dodge Pickup*, 959 F.2d 37, 41 n.5 (5th Cir. 1992)). This Court reviews de novo a grant of summary judgment and applies the same standards as the district court. *Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 603–04 (5th Cir. 2008). "The [district] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute as to a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). The evidence, including factual allegations set forth in verified complaints,[5] is viewed "in the light most favorable to the nonmoving party, but conclusional allegations and unsubstantiated assertions may not be relied on as evidence." *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011). The court must "draw all reasonable inferences in favor of the nonmoving party"

---

[5] *See Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit.").

and "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citations and internal quotation marks omitted). This Court reviews the denial of a Rule 59(e) motion for an abuse of discretion. *Dearmore v. City of Garland*, 519 F.3d 517, 520 (5th Cir. 2008).

## A.     Exhaustion

Butts and the Defendants contest whether the district court erred in dismissing Butts's claims for failure to exhaust. We agree that Butts failed to exhaust his claims against all Defendants other than Martinez.

Before bringing suit, the Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust all available administrative remedies. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This requirement applies to *Bivens* actions. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). That is, "prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citation and quotation marks omitted). The BOP offers a four-step grievance procedure: (1) informal resolution of the issue with prison staff, submitted on form BP-8; (2) a formal administrative remedy request to the Warden, submitted on form BP-9; (3) an appeal to the Regional Director, submitted on form BP-10; and (4) a national appeal to the Office of General Counsel in Washington, D.C., submitted on form BP-11. 28 C.F.R. §§ 542.13–15.

No. 15-41640

This Court takes "a strict approach" to the exhaustion requirement. *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003), *overruled by implication on other grounds by Jones*, 549 U.S. at 216. Under this strict approach, "mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion." *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010). An inmate's grievance must be sufficiently specific to give "officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). This Court reviews the district court's legal rulings concerning exhaustion de novo and its factual findings for clear error. *Dillon*, 596 F.3d at 273.

### 1. Butts's Claims Against All Defendants Other Than Martinez

A review of the administrative grievance forms at issue shows that Butts failed to exhaust his administrative remedies as to his claims against all Defendants other than Martinez. *See Johnson*, 385 F.3d at 517 (requiring that prisoners provide sufficient information to address a grievance, including who was involved for claims that a guard acted improperly). When his pro se reply brief is liberally construed, Butts claims that the three-page factual summary, which he attached to some of his grievances, was sufficiently specific to give officials a fair opportunity to address the claims against Defendants other than Martinez. While Butts referenced the actions of some of the other Defendants in the summary, he did not accuse any of them of wrongdoing. Moreover, Butts's BP-11 requests only that Martinez be investigated and sanctioned. Accordingly, the district court did not err by dismissing Butts's claims against the other Defendants.

### 2. Butts's Claims Against Martinez

The district court agreed with the Defendants that the BOP's administrative remedy program allowed Butts only to raise one issue per grievance form, and his grievance forms only challenged the correctness of his

10

disciplinary conviction by the UDC. The district court reasoned, without further elaboration, that "[w]hile plaintiff did exhaust all steps of the grievance procedure for his claims related to the disciplinary proceeding which resulted in the disciplinary conviction being overturned due to a procedural error regarding notice, plaintiff failed to properly raise his other constitutional claims." The Defendants maintain that Butts did not address any claims other than the correctness of the UDC's initial decision in his grievance forms and that the district court correctly analyzed the issue.

However, neither the district court nor the Defendants acknowledge that, beginning with his BP-9 and continuing throughout the administrative grievance process, Butts consistently complained that Martinez had violated his religious rights and had retaliated against him. Further, as the Defendants concede, the BOP administrative grievance process allows a prisoner to raise more than one complaint per grievance form so long as the complaints are closely related. *See* 28 C.F.R. § 542.14(c)(2) ("The inmate shall place a single complaint or a reasonable number of closely related issues on the [BP-9] form."). Neither the district court nor the Defendants explain how Butts's claims against Martinez for violation of his religious rights and retaliation are not closely related to his appeal from the UDC's decision. Given this, Butts has shown that the district court erred by dismissing his claims against Martinez for retaliation and violation of his religious rights for failure to exhaust administrative remedies.

Butts's claim that he was improperly searched, however, was not exhausted. Although he mentioned searches of his cell and property in his BP-9, BP-10, and the factual summary, Butts did not complain in his BP-11 that Martinez had ordered or conducted any improper searches. In his reply brief, Butts asserts that he attached the factual summary, which mentions searches, "to each grievance, through each step" and that "[e]ach grievance filed [was]

accompanied [by] the previous ones." However, the affidavit of BOP employee James E. Robinson, to which the administrative grievance forms were attached as exhibits, states that "*Attachment 4* [constitutes] a true and correct copy" of Butts's BP-11. That attachment contains no copies of the factual summary or other grievances mentioning improper searches. In any event, Butts was required to "state specifically the reason for appeal" in his BP-11, *see* 28 C.F.R. § 542.15(b)(1), and his BP-11 itself does not mention searches.

As he did not complete the administrative grievance process with regard to his stand-alone claim that Martinez violated his Fourth Amendment rights, the district court did not err by dismissing that claim for failure to exhaust administrative remedies. This Court need not consider whether Butts properly exhausted his other claims against Martinez because, as shown below, either he has abandoned them on appeal or they lack merit.

## B.     Summary Judgment on Exhausted Claims Against Martinez

Butts argues that the district court erred by granting summary judgment on the merits of his claims against Martinez. Specifically, Butts argues that Martinez violated his First Amendment right to freely exercise his religious beliefs, retaliated against him for exercising his constitutional rights, violated his due process rights, and discriminated against him on the basis of religion in violation of his equal protection rights.[6] We evaluate these claims in turn.

---

[6] Butts, however, does not substantively brief any challenges to the district court's dismissal of his Eighth Amendment, RFRA, or defamation claims. Nowhere in his brief on appeal, including the section pertaining to the violation of his First Amendment rights, does Butts mention RFRA. While Butts references solitary confinement, he does so only in support of his Fourth Amendment and retaliation claims, and does not otherwise argue an Eighth Amendment violation on appeal. He has therefore abandoned those three claims. *See Geiger v. Jowers*, 404 F.3d 371, 373 n.6 (5th Cir. 2005) ("Although *pro se* briefs are to be liberally construed, *pro se* litigants have no general immunity from the rule that issues and arguments not briefed on appeal are abandoned." (citation omitted)).

No. 15-41640

### 1. *First Amendment Free Exercise Claim*

Butts asserts an implied right to monetary damages under *Bivens* because Martinez violated his First Amendment right to freely exercise his religious beliefs. Neither the Supreme Court nor this Circuit has directly extended *Bivens* to violations of the Free Exercise Clause. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Given the complexity of the *Bivens* issue and the dearth of arguments available to this Court, we decline to conduct such an analysis here, and remand the issue for consideration before the district court.

Lawful incarceration inherently involves the limitation of many privileges and rights, but prisoners still benefit from some constitutional protections, including the First Amendment "directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Whether a prison regulation impermissibly encroaches upon a prisoner's First Amendment rights depends upon whether it is "reasonably related to legitimate penological interests." *Mayfield*, 529 F.3d at 607 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To assist courts in assessing whether a regulation burdening a prisoner's constitutional rights is reasonably related to a legitimate penological interest, the Supreme Court enumerated four factors:

> (1) [W]hether a "valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it," (2) whether there exist "alternative means of exercising the fundamental right that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether there is an "absence of ready alternatives" to the regulation in question.

*Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004) (quoting *Turner*, 482 U.S. at 89–90). The same standard applies to challenges based on prison authorities' actions as prison regulations. *See Jackson v. Cain*, 864 F.2d 1235, 1248 (5th

Cir. 1989) (applying *Turner* to determine whether acts of prison authorities violated an inmate's First Amendment rights). Ultimately, "the government objective must be a legitimate and neutral one." *Mayfield*, 529 F.3d at 607 (quoting *Turner*, 482 U.S. at 90). And this Court has denied summary judgment when a question of fact exists as to whether the government's objective is legitimate. *See id.* at 612.

When his pro se brief is liberally construed, Butts argues that the district court erred by granting summary judgment because whether Martinez was acting pursuant to a legitimate penological interest necessarily turns on the factual question whether Butts was wearing a gray or black yarmulke in the chow hall. *See Mayfield*, 529 F.3d at 612 (denying summary judgment for further factual development of whether a prison regulation violated the inmate's free-exercise rights). If the yarmulke was black, Butts contends, Martinez had no such legitimate interest given that BOP policy has long allowed black yarmulkes.

The district court did not specifically address why the factual question of the yarmulke's color did not preclude summary judgment. Instead, the district court first noted that "[w]hether suing under the Free Exercise Clause, RFRA and [the Religious Land Use and Institutionalized Persons Act ("RLUIPA")], plaintiffs must first raise a material question of fact regarding whether the BOP has placed a 'substantial burden' on their ability to practice their religion." And it concluded that the denial of a single meal to Butts did not rise to the level of substantial interference necessary to state a constitutional claim. In support of this conclusion, the court cited several opinions (only one of which was authored by this Court) holding that discrete or occasional denials of meals or religious services do not form bases for First Amendment or RFRA claims. *See, e.g.*, *Williams v. Bragg*, 537 F. App'x 468, 468–69 (5th Cir. 2013) (holding

14

that occasional cancellations of Muslim services did not violate prisoner's First Amendment rights).

But the analysis of Butts's First Amendment free exercise claim proceeds under a different framework than claims brought under RLUIPA or RFRA. Other circuits have required that a prisoner must make a threshold showing that a regulation imposes a substantial burden on their religious exercise in order to maintain free exercise claims.[7] However, free exercise claims in this Circuit are analyzed under the *Turner* framework separately and independently from RFRA and RLUIPA claims. *Compare Mayfield*, 529 F.3d at 607–12 (analyzing free exercise claims under *Turner* without addressing whether regulations substantially burdened inmate's free exercise), *with Mayfield*, 529 F.3d at 612–14 (analyzing whether regulations substantially burdened religious exercise under RLUIPA). Generally, this Court has not required a preliminary showing that a regulation substantially interferes with an inmate's religious rights before assessing whether the regulation is reasonably related to a penological interest.[8] In assessing whether Martinez's

---

[7] *See Ford v. McGinnis*, 352 F.3d 582, 592 (2d Cir. 2003) (noting a circuit split on the issue and assuming that the substantial burden test applies at the threshold of a *Turner* analysis); *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007) (assessing whether a prison official's conduct "substantially burdened" sincerely-held religious beliefs before applying *Turner*); *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008) (requiring as a pre-requisite that an inmate "raise a material question of fact regarding whether the BOP has placed a 'substantial burden' on his ability to practice his religion" for Free Exercise, RFRA, and RLUIPA claims); *Canell v. Lightner*, 143 F.3d 1210, 1214–15 (9th Cir. 1998) (finding that interference with prayer activities did not constitute a substantial burden on inmate's free exercise of religion).

[8] *See, e.g.*, *Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) (analyzing a free exercise claim under *Turner* and separately analyzing whether the action "substantially burdened" the practice of religion under RLUIPA); *Muhammad v. Lynaugh*, 966 F.2d 901 (5th Cir. 1992) (analyzing a free exercise claim under *Turner* without addressing whether the policy substantially interfered with his right); *Mitchell v. Quarterman*, 515 F. App'x 244, 246–47 (5th Cir. 2012) (same); *see also Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003) (rejecting Defendants' argument that an inmate is required to show that the challenged prison policy "substantially burdens" religious beliefs in a free exercise claim). *But see Randall v. McLeod*, No. 95-10106, 1995 WL 581973, at *4 (5th Cir. Sept. 15, 1995) (holding that prisoner did not

actions violated Butts's First Amendment rights, we must therefore determine whether Martinez's actions were reasonably related to a legitimate penological interest under the deferential standard set forth in *Turner*.

Butts alleged in his verified complaint that (1) a BOP policy allows prisoners to wear white or black yarmulkes;[9] (2) he was wearing a black yarmulke when Martinez told him that his headwear was not "BOP issued;" (3) Martinez refused to allow Butts to dine without removing his yarmulke, and Butts chose to leave rather than remove it; (4) Martinez intended to harass Butts for being Jewish, as shown by the facts that Martinez "cut [Butts] off" when Butts tried to answer his questions and confiscated Butts's ID; (5) Martinez subsequently made up a story that Butts was wearing a gray yarmulke to "cover-up" his harassment of Butts and to "set [Butts] up to be a liar, which is what he wrote [Butts] up for;" and (6) several facts showed that Martinez had lied about the gray yarmulke, including that no gray yarmulke was ever found despite that Butts's cell and property were searched three times and that Butts was strip searched twice, the chaplain had only ever seen Butts wear a black yarmulke, and Martinez did not confiscate the alleged gray yarmulke despite a BOP policy requiring the immediate confiscation of unauthorized items or contraband.

Defendants maintained, in their motion for summary judgment, that Martinez had a legitimate penological interest in confronting Butts because (1) "[Martinez] could [have] reasonably believe[d that] a violation of prison policy occurred by [Butts] wearing the yarmulke," (2) Butts was "disallowed

---

allege facts to show a substantial burden on his right to freely exercise religion when prison officials had failed to provide him with a pork-free meal on two separate occasions).

[9] Butts attached a copy of the policy in question to his opposition to the Defendants' motion for summary judgment. He also attached to his opposition a copy of an email from "Religious Services Low [sic]" indicating that a policy allowing prisoners to wear yarmulkes had been in effect since at least December 31, 2004.

from wearing the yarmulke he possessed [because] its status as an authorized institutional item was in question," and (3) prison officials were required to "maintain the secure and orderly running of the institution" or else "inmates . . . might perceive disciplinary staff were not serious about enforcing institution rules and policies." The Defendants did not specifically identify, or attach copies of, the BOP policies that they argue Martinez was seeking to enforce.

We conclude that Butts has raised an issue of material fact regarding the legitimacy of Martinez's actions. Whether there is a "valid, rational connection" between Martinez's actions and "legitimate governmental interest" under *Turner*'s first factor depends on resolving the fact issue regarding the color of the yarmulke. *See Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989). If the color complied with BOP policies, then the reasons advanced by the Defendants (enforcing institution rules and policies) do not appear to be legitimate. On the other hand, if the color of the yarmulke violated BOP policies, the penological interest appears legitimate and must be analyzed under the remaining *Turner* factors. *See Fluker v. King*, 679 F. App'x 325, 330 (5th Cir. 2017) ("'Factor one' is 'controlling'; 'the other factors merely help a court determine if the connection *is* logical.'" (quoting *Scott v. Miss. Dep't of Corr.*, 961 F.2d 77, 81 (5th Cir. 1992)). Because Butts has raised a fact issue as to whether Martinez acted pursuant to a legitimate penological interest, we conclude that summary judgment on his First Amendment claim was inappropriate.

However, the district court did not address the issue of whether a *Bivens* remedy is available for violations of the Free Exercise Clause under these circumstances. In *Bivens*, the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights" for the first time. *Corr. Servs. Corp. v. Malesko*, 534 U.S.

61, 66 (2001); *see also Bivens*, 403 U.S. 388. Specifically, *Bivens* implied a damages remedy for violations of the Fourth Amendment prohibition against unreasonable searches and seizures. *See Bivens*, 403 U.S. at 397. "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Malesko*, 534 U.S. at 70. But a *Bivens* remedy is not available for all constitutional violations. In fact, expanding the implied cause of action under *Bivens* is "a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (citing *Iqbal*, 556 U.S. at 675). Since *Bivens*'s inception, the Supreme Court has only extended *Bivens* beyond the deprivation of Fourth Amendment rights on two occasions: for violations of the Fifth Amendment Due Process Clause for gender discrimination, *Davis v. Passman*, 442 U.S. 228 (1979), and for violations of the Eighth Amendment prohibition against cruel and unusual punishment, *Carlson v. Green*, 446 U.S. 14 (1980). *Abbasi*, 137 S. Ct. at 1854–55.

In order to determine whether a *Bivens* remedy is available, courts must first assess whether Butts's claim presents a new *Bivens* context. *See Iqbal*, 556 U.S. at 675 (quoting *Malesko*, 534 U.S. at 68). If so, there are two circumstances where *Bivens* does not recognize an implied cause of action for constitutional violations. First, *Bivens* claims are unavailable "if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Abbasi*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18); *see also Zuspann v. Brown*, 60 F.3d 1156, 1160 (5th Cir. 1995) (quoting *Bivens*, 403 U.S. at 396). Second, *Bivens* remedies may be foreclosed by congressional action where an "alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).

No. 15-41640

Because the Supreme Court has not recognized a *Bivens* remedy in the First Amendment context, Butts's claim likely presents a new context under *Bivens*. *See Abbasi*, 137 S. Ct. at 1859, 1864; *Iqbal*, 556 U.S. at 675. This Court has also recognized that "a *Bivens* action is analogous to an action under § 1983—the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials." *Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003). And "[t]his [C]ourt does not distinguish between *Bivens* claims and § 1983 claims." *Espinal v. Bemis*, 464 F. App'x 250, 251 (5th Cir. 2012) (citing *Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005)). Although this Court "may affirm the district court's decision on any grounds supported by the record," *Phillips ex rel. Phillips v. Monroe Cty.*, 311 F.3d 369, 376 (5th Cir. 2002), we decline to assess whether a *Bivens* remedy is available for Butts's free exercise claim. Neither the district court nor the parties' briefs on appeal addressed the issue of whether a *Bivens* remedy is available for violations of the Free Exercise Clause. And questions regarding the proper scope of *Bivens* are complex, often involving thorough analyses of alternative remedy schemes created by Congress or factors counselling hesitation in the absence of such action. *See, e.g.*, *Abbassi*, 137 S. Ct. at 1858–63; *Bush v. Lucas*, 462 U.S. 367, 380–90 (1983). Without the benefit of further argument, we are ill-equipped to conduct such an analysis.

On remand, the district court should examine whether a *Bivens* remedy is available for violations of the Free Exercise Clause. The district court should also appoint counsel for Butts given the complexity and importance of this issue. While a trial court is not required to appoint counsel for an indigent plaintiff, the court has discretion to do so if, as here, it would advance the proper administration of justice. *See Sanchez v. Chapman*, 352 F. App'x 955, 957 (5th Cir. 2009) (citing *Branch v. Cole*, 686 F.2d 264, 266–67 (5th Cir.

19

1982)). Accordingly, we remand Butts's free exercise claim to the district court with instructions to appoint counsel.

### 2. *Retaliation Claim*

Butts argues that the district court erred by granting summary judgment on his retaliation claim against Martinez. Prison officials may not retaliate against prisoners for exercising their constitutional rights. *Zebrowski v. U.S. Fed. Bureau of Prisons*, 558 F. App'x 355, 358 (5th Cir. 2014) (citing *Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir. 1986)). This includes a prisoner's First Amendment right to file grievances, as retaliation has the potential to discourage exercising that right. *See Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). In order to successfully plead retaliation, Butts must establish that "(1) [he exercised] a specific constitutional right, (2) [Martinez] inten[ded] to retaliate against [Butts] for his . . . exercise of that right, (3) [Martinez took] a retaliatory adverse act, and (4) causation." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (citation omitted); *see also Zebrowski*, 558 F. App'x at 358. Butts must "produce direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (citations omitted). The retaliatory adverse act must be more than de minimis to state a viable retaliation claim; the act must be "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris*, 449 F.3d at 686; *see Bibbs*, 541 F.3d at 271–72 (surveying case law regarding de minimis acts in retaliation claims).

"Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected activities." *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (citing *Morris*, 449 F.3d at 684). When Butts's pro se complaint is liberally construed, he alleges that Martinez retaliated against him after

Martinez learned from Cranmer–Sutton that Butts intended to file an administrative grievance against Martinez. Thus, Butts alleged that he had exercised a specific constitutional right. *See Bibbs*, 541 F.3d at 270; *Reese*, 322 F. App'x at 383.

In rejecting Butts's claim for failure to establish a retaliatory motive or causation, the district court implicitly, but improperly, determined that Martinez's claim regarding the existence of a gray yarmulke was credible. *See Turner*, 476 F.3d at 343 (noting that courts should "refrain from making credibility determinations or weighing the evidence" at the summary judgment stage). Butts alleged, however, that Martinez's actions established his motivation for retaliation: roughly two hours after Butts spoke with Cranmer–Sutton about Martinez, Martinez falsely accused Butts of having worn a gray yarmulke, wrote Butts up for lying regarding the gray yarmulke, and sent him to the SHU. When viewed in the light most favorable to Butts, *Carnaby*, 636 F.3d at 187, these allegations revealed evidence of a retaliatory motive and causation. *See Woods*, 60 F.3d at 1166. Thus, the district court's grant of summary judgment was inappropriate.

Like Butts's free exercise claim, however, neither the district court nor the parties addressed whether Butt's retaliation claim is actionable under *Bivens*. Retaliation claims are actionable under § 1983. *See, e.g.*, *Morris*, 449 F.3d at 684. And a "*Bivens* action is analogous to an action under § 1983." *Evans*, 168 F.3d at 863 n.10. This Circuit thus does not distinguish between *Bivens* and § 1983 claims. *Izen*, 398 F.3d at 367 n.3. Indeed, this Circuit has largely permitted *Bivens* claims against prison officials alleging retaliation for exercising a constitutional right without addressing whether a *Bivens* remedy is available for such claims. *See, e.g.*, *Zebrowski*, 558 F. App'x at 358; *Burnette v. Bureau of Prisons*, 277 F. App'x 329, 332–33 (5th Cir. 2007); *Muniz v. Childers*, No. 95-50786, 1996 WL 255193, at *2 (5th Cir. Apr. 23, 1996). But

whether *Bivens* extends to First Amendment retaliation claims remains inconclusive. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012). On remand, the district court should consider whether a *Bivens* remedy is available under these circumstances and appoint counsel for Butts. *See Sanchez*, 352 F. App'x at 957 (citing *Branch*, 686 F.2d at 266–67).

### 3. Due Process Claim

Butts argues that the district court erred by granting summary judgment on his due process claims. To establish a due process violation in the prison context, a plaintiff must show that he was deprived of a liberty interest protected by the Constitution or statute. *See Richardson v. Joslin*, 501 F.3d 415, 418–19 (5th Cir. 2007) (citing *Sandin v. Conner*, 515 U.S. 472, 479 n.4, 483–84 (1995)); *see also Zebrowski*, 558 F. App'x at 358–59. But "[i]n the context of prison disciplinary proceedings, not every punishment gives rise to a constitutional claim." *Zebrowski*, 558 F. App'x at 358–59. "[A] prisoner's liberty interests are not violated unless a condition 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Driggers v. Cruz*, 740 F.3d 333, 338 (5th Cir. 2014) (quoting *Sandin*, 515 U.S. at 484). Thus, in determining whether an individual's due process rights have been violated, this Court first considers whether he has been denied a liberty or property interest. *See Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). Only if an individual makes such a showing will this Court consider "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.*

Here, Butts would be entitled to procedural due process with respect to his disciplinary proceeding if the hearing implicated a protected liberty interest. *See id.* However, neither the nine days of SHU confinement nor the 30-day loss of commissary privileges implicated a protected liberty interest. *See Malchi v. Thaler*, 211 F.3d 953, 958–59 (5th Cir. 2000) (loss of commissary

privileges and cell restriction do not implicate due process concerns); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (placement in administrative segregation without more does not amount to the deprivation of a constitutionally protected liberty interest). Butts therefore fails to show that the district court erred by granting summary judgment on his due process claims.

### 4. Equal Protection Claim

When his pro se brief is liberally construed, Butts alleges that the district court erred by dismissing, without addressing, his claim that Martinez discriminated against him on the basis of religion in violation of his equal protection right. The Fourteenth Amendment, which applies to state officials, contains an equal protection clause, while the Fifth Amendment, which applies to federal officials, does not. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). Nevertheless, "the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 133 S. Ct. 2675, 2695 (2013). Fifth Amendment equal protection claims against federal actors are analyzed under the same standards as Fourteenth Amendment equal protection claims against state actors. *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975).

To establish an Equal Protection Clause violation, Butts "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007) (citation and internal quotation marks omitted). Nowhere in his complaint does Butts identify any other individuals or groups that he claims were similarly situated but received superior treatment from Martinez, nor does he address this issue in his appellate brief. He therefore fails to show that the district court erred by dismissing such a claim on summary judgment.

No. 15-41640

## III. CONCLUSION

For the foregoing reasons, we find that the district court improperly dismissed Butts's free exercise and retaliation claims against Martinez on summary judgment. On remand, the district court should appoint counsel for Butts. We affirm the dismissal on summary judgment of Butts's claims against Defendants other than Martinez, as well as his due process and equal protection claims against Martinez for the reasons stated by the district court. Accordingly, we AFFIRM in part and REVERSE and REMAND in part for further proceedings consistent with this opinion.

24