**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 28, 2011

Lyle W. Cayce
Clerk

No. 09-60324

WILL TERRANCE PORTER,

Plaintiff–Appellee,

v.

CHRISTOPHER B EPPS, Individually and in his official capacity as the Commissioner of the Mississippi Department of Corrections,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Mississippi

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Defendant Christopher Epps, the Commissioner of the Mississippi Department of Corrections ("MDOC"), appeals the district court's denial of his motion for judgment as a matter of law or, in the alternative, motion for a new trial. The jury found Epps liable under 42 U.S.C. § 1983 for violating Will Porter's constitutional rights by unlawfully incarcerating him for fifteen months beyond the expiration of his sentence. Because we find Epps is entitled to qualified immunity, we reverse.

No. 09-60324

## I. FACTUAL AND PROCEDURAL BACKGROUND

Porter received a five-year sentence after he was convicted under Mississippi law for breaking into an automobile. The Mississippi trial court suspended four years of Porter's sentence and ordered him to serve one year in the MDOC Intensive Supervision Program ("ISP"), which is also known as house arrest. While on house arrest, Porter was arrested on suspicion of a misdemeanor charge. Mack E. Cox, an ISP officer with MDOC, issued Porter a Rule Violation Report ("RVR"). Porter was transported to an MDOC facility and processed.

Stephanie Jones, a hearing officer for MDOC, conducted a disciplinary hearing on the RVR. Jones determined that Porter violated the terms of the ISP rules and regulations, and she referred her decision to the MDOC records department so that Porter could be reclassified. The records department determined that since Porter's ISP had been revoked, he did not meet the conditions entitling him to the suspension of the four years on his sentence. Porter appealed the RVR through MDOC's grievance procedure, and he was denied relief at all three steps of that process. Porter then filed a motion for post-conviction relief in Mississippi state court. That court ruled that MDOC did not have the authority to reinstate an inmate's suspended sentence and ordered Porter to be released immediately.

Later, Porter filed suit in federal court under 42 U.S.C. § 1983, alleging that he was falsely imprisoned for fifteen months beyond the expiration of the sentence imposed upon him by the Mississippi trial court. All defendants were dismissed, except for Epps. Porter alleged that Epps, as a policymaker for MDOC, implemented the policies that led to the constitutional violations. Porter also alleged that Epps was aware of the MDOC records department's failure to interpret sentencing orders correctly, took no steps to remedy this situation by instituting procedural safeguards, training staff appropriately, or otherwise

hiring competent individuals, and that Epps's indifference resulted in Porter's unlawful incarceration.

Although Epps raised qualified immunity as an affirmative defense in his answer, he did not raise qualified immunity in the motion to dismiss or the motion for summary judgment. The motions argued that the defendants had Eleventh Amendment immunity for the claims against them in their official capacities and did not address the issue of immunity for the claims against them in their individual capacities. Instead, the jury was instructed that it could not find Epps liable if he had a reasonable belief that his actions did not violate Porter's constitutional rights and that "under the Doctrine of Qualified Immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The court also instructed the jury "that supervisory officials such as the Defendant Commissioner Epps cannot be held liable under 42 U.S.C. Section 1983 for the actions of subordinates such as Mack Cox and Stephanie Jones on any theory of vicarious liability or respondeat superior liability," but "[r]ather, the plaintiff must show that the conduct of the supervisor, in this case, Mr. Epps, denied the plaintiff his constitutional rights."

The jury returned a verdict for Porter and awarded him $250,000 in damages. Epps then filed a motion for judgment as a matter of law or, alternatively, a motion for new trial, in which he argued that he was entitled to qualified immunity and that he was impermissibly found liable on a theory of respondeat superior. The court denied the motion. It ruled that (1) the jury's determination that Epps was not entitled to qualified immunity was not "contrary to the overwhelming weight of evidence or against reason," and (2) there was substantial evidence to support the jury's verdict on grounds other than *respondeat superior*—such as Epps was personally involved in reviewing

No. 09-60324

Porter's third-step ARP form or that Epps's policies caused Porter's constitutional injury.  This appeal followed.

## II. STANDARD OF REVIEW

We review de novo the denial of a motion for judgment as a matter of law, applying the same standard as the district court.  *Wackman v. Rubsamen*, 602 F.3d 391, 399 (5th Cir. 2010).  "The jury verdict must be upheld unless a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  *Shepherd v. Dall. Cnty.*, 591 F.3d 445, 456 (5th Cir. 2009) (internal quotation marks and citation omitted).  In reviewing the sufficiency of the evidence, we "draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving party." *Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP*, 542 F.3d 475, 482 (5th Cir. 2008) (internal quotation marks and citation omitted).  We reverse "only if the evidence points so strongly and so overwhelmingly in favor of the []moving party that no reasonable juror could return a contrary verdict."  *Id.* (internal quotation marks and citation omitted).[1]

## III. DISCUSSION

A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation.  *Freeman v. Gore*, 483 F.3d 404,

---

[1] The case cited in *Travelers*, *Foradori v. Harris*, 523 F.3d 477 (5th Cir. 2008), and cases further back in the citation history, inexplicably and incorrectly state that the evidence must be overwhelmingly in favor of the *nonmoving* party in order for the court to reverse a denial of a Rule 50 motion. *See Cousin v. Trans Union Corp.*, 246 F.3d 359, 366 (5th Cir. 2001) ("When reviewing the denial of a motion for judgment as a matter of law, we will uphold a jury verdict unless the facts and inferences point so strongly and so overwhelmingly in favor of one party that reasonable men could not arrive at any verdict to the contrary.") (case from which the incorrect quotation in *Travelers* was originally derived).  Because the movant is the party challenging the jury verdict, the evidence must be so strongly in *his* favor that it warrants the court overturning the jury's verdict against him.

410–11 (5th Cir. 2007).  Qualified immunity questions should be resolved "at the earliest possible stage in litigation."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)) (internal quotation marks omitted).  But if the issue of qualified immunity is not decided before trial, the defense of qualified immunity may be submitted to the jury, "which must then determine the objective legal reasonableness of the [official's] conduct" by construing the facts in dispute.  *McCoy v. Hernandez*, 203 F.3d 371, 376 (5th Cir. 2000) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998)).

Epps argues that his actions, if they violated Porter's constitutional rights, were not objectively unreasonable in light of clearly established law.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. at 236.

## A.    There is a Clearly Established Right to Timely Release from Prison

Detention of a prisoner for over "thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process."  *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980).  Our precedent establishes that a jailer has a duty to ensure that inmates are timely released from prison.  We have explained that "[w]hile not a surety for the legal correctness of a prisoner's commitment, [a jailer] is most certainly under an obligation, often statutory, to carry out the functions of his office.  Those functions include not only the duty to protect a prisoner, but also the duty to effect his timely release."  *Whirl v. Kern*, 407 F.2d 781, 792 (5th Cir. 1969) (internal citations and footnote omitted).  We reaffirmed the jailer's obligation in this regard in *Bryan v. Jones*, 530 F.2d 1210 (5th Cir. 1976) (en banc), a case in which a prisoner filed suit for damages under § 1983 for false imprisonment

after he was held in prison for an additional month because the records were not updated to reflect his release notice. *Id.* at 1212–13. There, the en banc court recognized that, despite the defense of qualified immunity, "[i]f [the jailer] negligently establishes a record keeping system in which errors of this kind are likely, he will be held liable." *Id.* at 1215. Thus, the issue is whether Epps's actions, in light of his duty to ensure Porter's timely release from prison, were objectively unreasonable.

**B.    No Reasonable Jury Could Have Found that Epps's Conduct Was Objectively Unreasonable**

Porter's § 1983 claim is predicated on Epps's conduct in (1) failing to promulgate adequate policies in the records department; (2) failing to train and supervise the employees in the records department; and (3) denying Porter's third-step appeal. "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Id.* (internal quotation marks and citation omitted, alterations and emphasis in original). "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992). A supervisor may also be liable for failure to supervise or train if: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the

No. 09-60324

plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009).

Liability for failure to promulgate policy and failure to train or supervise both require that the defendant have acted with deliberate indifference. In *Hare v. City of Corinth*, 135 F.3d 320 (5th Cir. 1998), we discussed the difficulty in reconciling the deliberate indifference standard with the objective reasonableness standard used in addressing qualified immunity. *Id.* at 327–28. We explained that "[o]bviously, the analysis for objective reasonableness is different from that for deliberate indifference . . . . Otherwise, a successful claim of qualified immunity in this context would require defendants to demonstrate that they prevail on the merits, thus rendering qualified immunity an empty doctrine." *Id.* at 328. We further noted that "the subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident." *Id.* Here, we are concerned with qualified immunity. Accordingly, we must consider whether Epps's actions were objectively unreasonable in light of the clearly established law that a prison official must ensure an inmate's timely release from prison and that such an official may be liable for failure to promulgate policy or failure to train/supervise if he acted with deliberate indifference to constitutional rights.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (internal quotation marks omitted, alteration in original) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)). To establish that a state actor disregarded a known or obvious consequence of his actions, there must be "actual or constructive notice" "that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights" and the actor nevertheless "choose[s] to retain that program." *Id.* (citing *Bryan Cnty.*, 520 U.S.

7

at 407). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference," because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* (internal quotation marks omitted). Without cabining failure-to-train claims in this manner (or, logically, failure-to-promulgate-policy claims), a standard "less stringent" than deliberate indifference would be employed, and "a failure-to-train claim 'would result in *de facto respondeat superior* liability.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).

**1.    Epps's Failure to Promulgate Policies**

Porter first asserts that Epps is liable for failing to promulgate adequate policies in the records department. The records department determines a release date for a prisoner based on the sentencing order and the rules and regulations of MDOC. Epps testified that he is responsible for implementing all policies and procedures at MDOC.

A review of the record reveals that there was insufficient evidence to support a jury finding that Epps's failure to promulgate policy was objectively unreasonable in light of clearly established law. The evidence did not show that a reasonable person would have had actual or constructive notice that MDOC's policies with regard to the records department would result in instances of false imprisonment. Epps's testimony showed that there were policies in place with regard to sentencing orders. MDOC had a records department in which staff interpreted sentencing orders in accordance with training provided by attorneys. Epps placed a lawyer in the department to further ensure the accuracy of the interpretations. In addition, Epps testified that MDOC worked with judges to make future sentencing orders more understandable.

Porter presented no evidence showing that these policies, or the lack of others, were unreasonable. Epps testified that he could not recall other incidents in which persons had been kept beyond their sentences because of records department errors, and Porter presented no evidence of similar false imprisonments. There was no evidence that the records department had a practice of reinstating suspended sentences. Further, Epps's testimony that the staff in the records department was not highly paid and that the positions had a high turnover rate does not establish that his policies caused Porter's injuries. Epps did not determine the salary of records department staff, and thus any problem attributable to low pay cannot be attributable to Epps. Moreover, the staff, while low-paid, was trained. The mere fact that the employees were not paid well does not show that instances of false imprisonment would be inevitable under this structure.

In sum, no reasonable juror could determine that it was "obvious that the likely consequence[]" of not adopting more specific policies in the records department would be a deprivation of civil rights. While it is unfortunate that the records department erred in interpreting the sentencing order for Porter, this error does not support a finding that Epps's policies involving the records department were objectively unreasonable. Accordingly, Epps is entitled to qualified immunity in this regard.

**2.    Epps's Failure to Train/Supervise**

There is insufficient evidence to support a finding that Epps's training or supervision of the employees in the records department was objectively unreasonable. Epps testified that employees in the records department had been trained and had been through orientation. He asserted that the employees in the records department had attended training sessions with a lawyer "to ensure that they better understand the orders." Epps also stated that he instituted a system in the records department by which records technicians advance levels

after being trained for a certain number of years.  Epps further testified about training programs for the circuit judges: "[W]e train the judges and ask them to put in the sentencing order exactly what they want us to do."  Also, Epps explained that he "put lawyers in that department to try to help the staff [in interpreting] sentencing orders from these different circuit judges."

Porter presented no evidence to contradict Epps's testimony.  Without more, the fact that an employee erred in one instance does not provide sufficient evidence to show that Epps's alleged actions in failing to train were objectively unreasonable.  Accordingly,  Epps is entitled to qualified immunity on this issue.

**3.    Epps's Involvement in Porter's Third-Step Appeal**

Porter also argues that Epps was personally involved in Porter's unlawful detention because his signature is on the form denying Porter's third-step appeal.  Epps denies that he was personally involved in Epps's unlawful detention, and the lower court did not address whether Epps was entitled to qualified immunity for this claim.

As an initial matter, the evidence is undisputed that Epps had for many years delegated responsibility for evaluating third-step appeals to Deputy Commissioner Emmett Sparkman.  Sparkman—not Epps—signed Epps's name to the order denying Porter's appeal.  Porter offered no further evidence that Epps was personally involved in denying his third-step appeal.  Thus, Epps's own, direct actions with regard to Porter cannot be a basis of liability.

Moreover, Epps contends that the records department's interpretation of Porter's sentencing order was reasonable, and this same argument extends to the reasonableness of Epps's alleged denial of Porter's third-step appeal. Porter was "sentenced to serve a term of FIVE (5) YEARS in an institution under the supervision and control of the [MDOC]."  The sentencing order stated,

> the Court hereby suspends the execution of the above sentence for a period of FOUR (4) YEARS, the

> suspension of this sentence to commence after the Defendant has served <u>ONE (1) YEAR in the INTENSIVE SUPERVISION PROGRAM (HOUSE ARREST)</u> under the supervision and control of the Department of Corrections, until the Court in term time, or the Judge in vacation, shall alter, extend, terminate or direct the enforcement of the above sentence, and the suspension of said sentence is based upon the following conditions . . . .

While the list of conditions included the condition that "Defendant shall hereafter commit no offense against the laws of this or any State of the United States or of the United States," the list did not include completion of ISP.

Epps contends that it was objectively reasonable to interpret the sentencing order to require completion of ISP prior to the suspension of Porter's sentence. Porter does not address this argument. In light of the language of the sentencing order, the records department's interpretation of that order was objectively reasonable, even if the Mississippi court concluded that such an interpretation was incorrect. Thus, Epps is entitled to qualified immunity to the extent that Porter's claim is based on Epps's personal participation in the unlawful detention.

## IV. CONCLUSION

Because Epps is entitled to qualified immunity on Porter's claims, we reverse the district court.

REVERSE

11

No. 09-60324

OWEN, Circuit Judge, concurring:

I concur in the opinion of the court, except to the extent that it might be read as placing any reliance on this court's decision in *Bryan v. Jones*.[2]

In this court's en banc opinion in *Bryan*, we said more than thirty-five years ago that a jailer could be held liable "[i]f he negligently establishes a record keeping system in which errors [leading to continued incarceration after charges were dismissed] are likely."[3]  In light of subsequent Supreme Court decisions,[4] this is not a correct statement of the law.

As today's opinion correctly notes, liability for failures to promulgate policy, train, or supervise can only arise when the defendant acts with deliberate indifference,[5] a considerably higher standard than negligence.[6]  "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a *known or obvious* consequence of his action,"[7] not merely a likely one.  The court's opinion today properly applies current Supreme Court precedent as the governing law.  To the extent that *Bryan* is cited as establishing a negligent standard, that is not the applicable standard, and it is not the standard that the court actually applies.

*      *      *

With the foregoing explanation, I concur in the opinion of the court.

---

[2] 530 F.2d 1210 (5th Cir. 1976) (en banc).

[3] *Id.* at 1215.

[4] *See, e.g., Connick v. Thompson*, __ U.S. __, 131 S.Ct. 1350 (2011); *Bd. of Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397 (1997).

[5] *Ante*, at 7.

[6] *Bryan Cnty.*, 520 U.S. at 407 ("A showing of simple or even heightened negligence will not suffice.").

[7] *Connick*, 131 S.Ct. at 1360 (alteration in original) (emphasis added) (quoting *Bryan Cnty.*, 520 U.S. at 409) (internal quotation marks omitted).

12