# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 21, 2020

Lyle W. Cayce
Clerk

No. 20-30125

Ellis Ray Hicks,

*Plaintiff—Appellee*,

*versus*

James M. LeBlanc, Secretary, Department of Public Safety and Corrections, individually and in his official capacity; Terry Lawson, Department of Corrections employee, individually and in his official capacity,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:19-CV-108

Before Graves, Costa, and Engelhardt, *Circuit Judges*.

Per Curiam:*

Ellis Ray Hicks brought a lawsuit under 42 U.S.C. § 1983 and Louisiana state law against the Louisiana Department of Public Safety and

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-30125

Corrections (DPSC); James LeBlanc, individually and in his official capacity as the DPSC Secretary; and Terry Lawson, individually and in his official capacity as a DPSC employee. Hicks alleged that he was wrongfully detained for sixty days after the expiration of his prison sentence. The district court denied qualified immunity at the motion-to-dismiss stage, which LeBlanc and Lawson appealed. We conclude that the district court properly denied qualified immunity for Lawson but not for LeBlanc. Accordingly, we AFFIRM IN PART and REVERSE IN PART.

## I.

On May 19, 2008, Hicks was arrested for second-degree battery in Louisiana and released on bond after five days of detention on May 23, 2008. He was sentenced to probation and later incarcerated on that charge from March 27, 2012 to May 23, 2013. Accordingly, he served approximately 428 days in custody in Louisiana.

On July 25, 2016, Hicks was arrested in Louisiana for a parole violation, stemming from a conviction in Arkansas for which he served 455 days in Arkansas' Faulkner County Jail. On January 3, 2017, after 163 days of pretrial detention, Hicks pled guilty to the violation in the Second Judicial District of Louisiana, which sentenced him to four years of hard labor and gave him credit for time served in Arkansas. Hicks served his sentence at the Claiborne Parish Detention Center. Hicks alleged that he should have been released on February 24, 2018.

On February 23, 2017, Lawson, a DPSC employee at the David Wade Correctional Center, calculated Hicks' sentence to end on February 28, 2018. However, on March 10, 2017, Lawson recalculated the sentence to end on May 23, 2019, essentially removing the credit for time served in Arkansas.

When Hicks questioned the new release date, he was told by Brian Flynn, Claiborne Parish Clerk of Court, that the DPSC would not give him

credit for time served without an official document from the State of Arkansas showing the credits due. Lawson privately informed Hicks that he was not qualified to receive credit for time served.

On June 23, 2017, with the help of friends and family, Hicks obtained a letter from the Arkansas Department of Corrections confirming his time served in Arkansas. The letter was copied to the Claiborne Parish Detention Center, the David Wade Correctional Center, and Flynn. On July 3, 2017, the letter was sent to Lawson, who recalculated the sentence to end on January 8, 2018.

On July 11, 2017, because Hicks remained concerned that he was not receiving proper time-served credit, he filed a motion to clarify the record in the Second Judicial District Court. On August 15, 2017, the sentencing judge again ordered that Hicks' sentence be "four (4) years of hard labor with credit for all time served, including the time served in the State of Arkansas." On December 13, 2017, Lawson recalculated the sentence and concluded the release date to be July 11, 2018. Hicks alleged that Lawson purposely delayed the release date in retaliation to Hicks' active pursuit of his timely release.

On January 5, 2018, Hicks filed an Administrative Remedy Procedure regarding Lawson's refusal to consider his time-served credit. On January 10, 2018, Hicks filed a motion to enforce the judge's order, which was granted on January 12, 2018. On February 6, 2018, a habeas hearing was held, in which the judge and the District Attorney confirmed that the sentence included time served in Arkansas, but the judge advised Hicks that she could do nothing else to help him and that he needed to file a lawsuit in Baton Rouge against the DPSC. Hicks continued to pursue relief regarding his release date. During this time, Lawson expressed to Hicks' friends and family that "an awful lot of people were calling him" about Hicks; that "anyone who messes

with me gets longer time"; and that "if someone keeps bothering me about their computations they can do more time."

On April 17, 2018, Hicks' attorney called Lawson inquiring why Hicks had not yet been released. In a recorded phone call, Lawson advised the attorney that "judges have no say whatsoever to us applying our time comp laws," and confirmed that Hicks was only getting 904 days of credit, which excluded time served in Arkansas. On April 20, 2018, Hicks' attorney communicated with Jonathan Vining at the DPSC headquarters. On April 25, 2018, Hicks was released from prison.

On December 10, 2018, Hicks filed the instant action against the DPSC, LeBlanc, and Lawson, alleging, *inter alia*, that the defendants violated his Fourteenth Amendment and First Amendment rights, and that the DPSC and LeBlanc should be held liable for the DPSC's practice of detaining prisoners beyond their release dates.

Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(c), asserting that: (1) Hicks' claims for money damages against defendants in their official capacities were barred by Eleventh Amendment sovereign immunity; (2) his claims were barred under *Heck v. Humphrey*, 512 U.S. 477 (1994); and (3) LeBlanc and Lawson were entitled to qualified immunity. The district court dismissed Hicks' claims for monetary damages against defendants in their official capacities, but found no grounds to dismiss the other claims under *Heck* or the qualified immunity doctrine. LeBlanc and Lawson timely appealed. On appeal, Hicks filed a motion for sanctions under Federal Rule of Appellate Procedure 38.

## II.

We have jurisdiction to review a district court's order denying a motion to dismiss on the basis of qualified immunity to the extent that it turns on an issue of law. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). "We

review the district court's denial of the qualified immunity defense de novo, accepting all well-pleaded facts as true and viewing them in the light most favorable to the plaintiff." *Id*. "In an interlocutory appeal of a denial of qualified immunity, we have jurisdiction to consider only whether 'a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law.'" *Id*. (quoting *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc)).

Thus, to the extent that Appellants' arguments rest on factual disputes (e.g., Hicks was "under-detained" rather than over-detained), "we have jurisdiction only to decide whether the district court erred in concluding as a matter of law that officials are not entitled to [qualified immunity] on a given set of facts." *Ramirez v. Escajeda*, 921 F.3d 497, 499 (5th Cir. 2019) (quoting *Rich v. Palko*, 920 F.3d 288, 293 (5th Cir. 2019)). "We do not consider the correctness of the plaintiff's version of the facts." *Id*. at 500 (internal quotation marks, alteration, and citation omitted).

## III.

Appellants argue that the district court erred in denying their qualified immunity defense at the motion-to-dismiss stage. They assert that Hicks failed to adequately plead facts supporting his claims that Lawson over-detained him in violation of his Fourteenth and First Amendment rights, and that LeBlanc was deliberately indifferent to the practice of over-detention of DPSC inmates. We first address the Fourteenth Amendment claims asserted against both defendants, then turn to the First Amendment claim against Lawson.

## A.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts conduct a two-step inquiry to determine whether state actors are entitled to qualified immunity. *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). First, a court decides whether the facts that the plaintiff has alleged in her complaint show a violation of a constitutional right. *Id.* The next step is to ask whether the facts pleaded establish that a defendant's actions were objectively unreasonable in light of clearly established law at the time of the alleged misconduct. *Id.* at 244. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (quoting *Saucier*, 533 U.S. at 202).

## B.

With respect to his Fourteenth Amendment claim, Hicks satisfied the first prong of the qualified immunity inquiry when he alleged that Lawson refused to consider judge-ordered time-served credit and caused Hicks to be incarcerated until April 25, 2018, approximately sixty days after the correct release date of February 24, 2018. The Fourteenth Amendment Due Process Clause is violated where a prisoner remains incarcerated after the legal authority to hold him has expired. *See Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980) ("Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process."); *see also Porter*, 659 F.3d at 445 ("[A] jailer has a duty to ensure that inmates are timely released from prison.").

Further, Lawson's alleged actions were objectively unreasonable in light of clearly established law at the time of his misconduct. A prisoner's right to timely release was clearly established well before 2017, when

No. 20-30125

Lawson's actions began to occur. *See id*. A reasonable DPSC employee also should have known to credit time served when calculating an inmate's release date, where the court ordered such credit to be considered. *See* LA. CODE CRIM. PROC. ANN. art. 883.1 ("The sentencing court may specify that the sentence imposed be served concurrently with a sentence imposed by a federal court or a court of any other state . . . ."); LA. CODE CRIM. PROC. ANN. art. 880 ("A defendant shall receive credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence."); *see also Boddye v. La. Dep't of Corr.*, 175 So. 3d 437, 441 (La. Ct. App. 2015) ("It is well settled that the determination of the sentence a defendant is to serve, and what, if any, conditions are to be imposed on that sentence, is made by the trial judge, not the defendant's custodian."); *Dorman v. Ward*, 718 So. 2d 474, 476 (La. Ct. App. 1998) (holding that where an inmate is convicted of a new felony in Florida while on parole supervision on a prior offense in Louisiana, the sentencing court may give credit for time served in Florida toward his Louisiana sentence for parole revocation). Accordingly, the district court did not err in denying Lawson's qualified immunity defense against Hicks' Fourteenth Amendment claim.

## C.

Having established that Hicks' Fourteenth Amendment rights were violated when he was incarcerated approximately sixty days beyond his release date, we must next consider whether LeBlanc's actions, in light of his duty to ensure an inmate's timely release, were objectively unreasonable. *See Porter*, 659 F.3d at 447.

A supervisory official may be held liable only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury. *Id.* at 446. "In order to establish supervisor liability for constitutional

violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Id.* (internal quotation marks and citation omitted, alterations and emphasis in original). "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Id.* (quoting *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992)). "A supervisor may also be liable for failure to supervise or train if: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Id.* (quoting *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009)).

Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)). To establish a state actor's disregard, there must be "actual or constructive notice" "that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights" and the actor nevertheless "choose[s] to retain that program." *Id.* (citation omitted). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference." *Id.* at 62 (internal quotation marks and citation omitted).

The complaint contained no allegations that LeBlanc affirmatively participated in the acts that caused Hicks' constitutional deprivation. Instead, Hicks' claim against LeBlanc was predicated on his conduct in (1) failing to promulgate adequate policies, and (2) failing to train and supervise DPSC employees. We must therefore consider whether LeBlanc's alleged actions, or inaction, were objectively unreasonable in light of the clearly

established law that a prison official must ensure an inmate's timely release and that such an official may be liable for failure to promulgate policy or failure to train and supervise if he acted with deliberate indifference to constitutional rights. *See Porter*, 659 F.3d at 446.

Whether LeBlanc acted with deliberate indifference is a close call. Hicks alleged that LeBlanc knew of the DPSC's long history of over-detaining inmates; that DPSC employees used different methods to calculate release dates; and that the DPSC had not disciplined employees who miscalculated sentences. However, the alleged facts—which included processing delays, data errors, inconsistent calculation methodologies, and unspecified deficiencies—speak to the incompetence of DPSC employees and the lack of adequate training and supervision. Based on these allegations, LeBlanc could be held liable for *incompetent* over-detention, such as the failure to process a prisoner's release or immediately compute an inmate's sentence after being sentenced to time served. *See Traweek v. Gusman*, 414 F. Supp. 3d 847 (E.D. La. 2019); *Grant v. Gusman*, No. 17-2797, 2018 WL 3869494 (E.D. La. Aug. 14, 2018). But it cannot be said that LeBlanc had notice that his employees were purposely disregarding sentencing orders out of retaliatory intent. The complaint was devoid of allegations supporting the reasonable inference that a pattern of *intentional* over-detention existed in the DPSC; that is, the alleged facts suggest a pattern of over-detention caused by quality control deficiencies and the lack of training and supervision, not a pattern of over-detention stemming from the blatant refusal to credit offenders with time served contrary to sentencing orders. In the absence of such a pattern, LeBlanc could not have acted with deliberate indifference to Lawson's intentional sentencing miscalculation and over-detention of Hicks. Accordingly, the district court erred in denying LeBlanc's defense of qualified immunity.

No. 20-30125

**D.**

We next address the First Amendment claim. To state a valid claim for retaliation, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Butts v. Martin*, 877 F.3d 571, 588 (5th Cir. 2017). A plaintiff must "produce direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Id.*

Hicks satisfied the first prong of the qualified immunity inquiry when he alleged that Lawson, in retaliation against Hicks for pursuing judicial remedies to confirm his timely release, extended his sentence by disregarding time-served credit (again). Prison officials may not retaliate against prisoners for exercising their constitutional rights, including a prisoner's First Amendment right of access to the courts. *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993). "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities . . . ." *Butts*, 877 F.3d at 589 (citing *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009)). Protected activities include "exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).

Under the second prong, Lawson's actions were objectively unreasonable in light of clearly established law at the time of his misconduct. A prisoner's right of access to the courts was clearly established well before Lawson's actions occurred. *See id.* No reasonable DPSC employee could have assumed that she could retaliate against a prisoner and extend his sentence simply because he pursued judicial remedies to confirm his timely release. *See id.* The alleged chronology of the events and Lawson's statements show the causal connection between Hicks' constitutional

10

activity and Lawson's unlawful actions. Accordingly, the district court did not err in denying Lawson's qualified immunity defense against Hicks' First Amendment claim.

## IV.

Lastly, we address Hicks' motion for sanctions filed pursuant to Federal Rule of Appellate Procedure 38. Under Rule 38, a court of appeals may award "just damages and single or double costs" if it determines that an appeal is frivolous. FED. R. APP. P. 38. An appeal is frivolous "if the result is obvious or the arguments of error are wholly without merit." *Coghlan v. Starkey*, 852 F.2d 806, 811 (5th Cir. 1988). We exercise our discretion not to grant sanctions under Rule 38 in this case. Though Lawson's arguments on appeal lacked merit, LeBlanc's appeal was successful and cannot be said to be frivolous. Accordingly, we deny the motion for sanctions.

## V.

For the foregoing reasons, we AFFIRM the district court's judgment denying qualified immunity for Lawson and REVERSE the judgment denying qualified immunity for LeBlanc. We DENY Appellee's motion for sanctions.