# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 15, 2023

Lyle W. Cayce
Clerk

———————————

No. 21-30625

———————————

Percy Taylor,

*Plaintiff—Appellee*,

*versus*

James LeBlanc, *Secretary*,

*Defendant—Appellant*.

———————————————————

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:21-CV-72

———————————————————

Before Graves, Ho, and Duncan, *Circuit Judges*.

James C. Ho, *Circuit Judge*:

We withdraw our prior opinion in this case, *Taylor v. LeBlanc*, 60 F.4th 246 (5th Cir. 2023), and substitute the following in its place.

\* \* \*

The Fourteenth Amendment guarantees that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. § 1. So it should go without saying that the government cannot hold a prisoner without the legal authority to do so, for

that would "deprive" a person of his "liberty . . . without due process of law." *Id.*

Consistent with these principles, "[o]ur precedent establishes that a jailer has a duty to ensure that inmates are timely released from prison." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). "Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process." *Douthit v. Jones*, 619 F.3d 527, 532 (5th Cir. 1980).

The Louisiana Department of Public Safety and Corrections recently conducted a study that uncovered a substantial number of inmates who were detained long past the expiration of their sentences. *See Crittindon v. LeBlanc*, 37 F.4th 177, 183 (5th Cir. 2022). Many inmates are detained in jail during trial or sentencing, and then transferred to the Department to serve the rest of their sentence in prison. But the study discovered that some local jails in Louisiana were often slow to communicate with the Department. As a result, some inmates would not get credit for their jailtime in a timely manner, and would therefore remain in prison past the length of their sentences.

Percy Taylor was detained beyond the expiration of his sentence, but for a different reason: Department officials gave him credit for time served in pre-trial detention, but only for one (rather than both) of his two consecutive sentences. That was the right thing to do under the law then in effect. But Taylor was entitled to the more generous provision in effect at the time his sentence was entered. As a result, he served over a year longer than he should have.

After his release, Taylor brought suit against various Louisiana officials under 42 U.S.C. § 1983, among other claims. This appeal concerns only one of those claims: Taylor's claim against the head of the Department,

No. 21-30625

Secretary James LeBlanc.  LeBlanc appeals the denial of qualified immunity arguing, *inter alia*, that his conduct wasn't objectively unreasonable in light of clearly established law.

The right to timely release is clearly established.  But Taylor does not show how LeBlanc's conduct was objectively unreasonable in light of clearly established law.  Taylor contends that LeBlanc was objectively unreasonable because he failed to assign the task of calculating release dates to an attorney.  But nothing in the Constitution requires that such actions be undertaken by a member of the bar.  Accordingly, we reverse.

## I.

For purposes of this appeal, we accept the factual allegations in Plaintiff's complaint as true.  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Taylor was imprisoned for a Louisiana felony conviction.  He was later released on parole for good behavior.

While on parole, Taylor was arrested, detained pending trial, and eventually convicted on another felony offense.  His parole for his first offense was revoked, and he was additionally sentenced to a second, consecutive term of imprisonment.

Eventually Taylor calculated his release date and believed it should have been at least two years earlier than the release date specified in his file.  So he filed an Administrative Remedy Procedure grievance.  He argued he should've received overlapping credit on both of his sentences for the time he spent in pre-trial detention for his second sentence.  And he argued his parole should have been deemed revoked as of his arrest on the second offense rather than his conviction.  A non-attorney Department employee

denied the grievance, seemingly misunderstanding Taylor's request as one for certain good time credit he wasn't entitled to.

Taylor appealed unsuccessfully. The denial explained that, under a law enacted after Taylor's second conviction and sentencing, the time Taylor spent in pre-trial detention for the second offense could not also be credited toward his sentence on the first offense. *See* LA. CODE CRIM. PROC. art. 880(E). It noted that overlapping credits are prohibited when the sentences are consecutively, rather than concurrently, imposed. *See id.* at 880(B).

Taylor sought review from the state district court. A commissioner of the state district court issued a report recommending that the court grant the petition for review, but not that Taylor be immediately released. According to the report, Taylor should have received credit for jail time starting from the arrest on the second offense on both sentences. That's because the version of the relevant state law in effect when Taylor's parole was revoked and he was convicted of the second offense didn't expressly prohibit overlapping jail credits for consecutive sentences. The state district court adopted the recommendation and ordered Taylor's master prison record be recalculated to give credit for jail time as to both sentences.

Taylor was released significantly later than the date he alleges he should have been released.

Taylor sued, bringing various claims seeking damages for false imprisonment—including a § 1983 claim against LeBlanc. The operative complaint alleged, *inter alia*, that LeBlanc—a final policymaker—failed to initiate policies ensuring inmates' timely releases, that he failed to train or supervise employees carrying out the Administrative Remedy Procedure process, and that he was aware that inmates were held for longer than their sentences due to reports, public statements, and various cases documenting

No. 21-30625

instances of inmates being detained beyond their sentences. The district court granted in part and denied in part the motion to dismiss.

Relevant here, the district court denied the motion as to the claim against LeBlanc, finding that he wasn't entitled to qualified immunity. The district court found that Taylor sufficiently alleged a pattern of overdetention stemming from inadequate training, noting that the allegations included citations to various cases, reports, and statements suggesting LeBlanc "was aware of similar constitutional violations but failed to correct them."

LeBlanc appealed the denial of qualified immunity.[1]

## II.

"Under the collateral order doctrine, we have jurisdiction to review orders denying qualified immunity." *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022). We review de novo a district court's denial of a motion to dismiss on qualified immunity grounds, accepting as true all well-pleaded facts and drawing all reasonable inferences in favor of the nonmoving party. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly

---

[1] Taylor argues that the district court shouldn't have dismissed the other claims. We lack jurisdiction to review those dismissals on interlocutory appeal. This court has jurisdiction to review final decisions of a district court. *Tracy v. Lumpkin*, 43 F.4th 473, 475 (5th Cir. 2022). But the collateral-order doctrine presents a "narrow" exception to that principle. *Id.* Under the collateral-order doctrine, "non-final orders are immediately appealable if they: (1) conclusively determine the disputed question; (2) resolve an important issue completely separate from the merits of the action; and (3) are effectively unreviewable on appeal from a final judgment." *Id.* (cleaned up). Taylor's remaining claims don't fall within this exception. Nor does pendant jurisdiction exist, because those other claims are not "inextricably intertwined" with the denial of qualified immunity for Secretary LeBlanc. *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 468 (5th Cir. 2014).

established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). "A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter*, 659 F.3d at 445. We are free to decide which prong of the qualified immunity analysis to address first. *See Pearson*, 555 U.S. at 242 ("[T]he judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each [qualified immunity] case.").

It is clearly established that inmates have the right to timely release from prison consistent with the terms of their sentences. *See Crittindon*, 37 F.4th at 188; *Porter*, 659 F.3d at 445. But Taylor must also show how Secretary LeBlanc's "actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter*, 659 F.3d at 445.

The Supreme Court has repeatedly made clear that "[w]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the *objective legal reasonableness* of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (cleaned up, emphasis added).

So a plaintiff must show that "the conduct of the defendants was objectively unreasonable in the light of . . . clearly established law." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 326 (5th Cir. 1998) (emphasis omitted). *See also*, *e.g.*, *Roque v. Harvel*, 993 F.3d 325, 334 (5th Cir. 2021) (defendant "is entitled to qualified immunity unless his actions were objectively unreasonable in light of clearly established law") (quotations omitted); *Blake*

*v. Lambert*, 921 F.3d 215, 219 (5th Cir. 2019) (qualified immunity turns on whether defendant's conduct is "objectively unreasonable in light of clearly established law"); *Hinojosa v. Livingston*, 807 F.3d 657, 669 (5th Cir. 2015) (same).

But the objectively unreasonable standard is not "that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is . . . that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation omitted).  The critical consideration is fair warning.  *See id.* at 739–41.

## III.

Department officials declined to apply Taylor's pre-trial detention credits on both of his consecutive sentences.  That was correct under current law. *See* La. Code Crim. Proc. art. 880(B).  But it was wrong here, because Taylor's release date should have been governed by the law applicable at the time of his sentence, which allowed Taylor to apply his credits to both of his sentences.

This appeal, however, does not concern the conduct of lower-level officials at the Department.  Rather, the question before us is whether LeBlanc was objectively unreasonable in how he supervised the entire Department.

Taylor contends that LeBlanc should have delegated the calculation of release dates to lawyers rather than non-lawyers—and that his failure to do so was objectively unreasonable.  But nothing in the Constitution requires that these determinations be made by attorneys.  At the federal level, pre-sentencing reports are routinely conducted by federal probation officers who are not lawyers.  If that's objectively reasonable, then it's hard to say that it

No. 21-30625

was objectively unreasonable for LeBlanc to delegate sentencing calculations to non-lawyers as well.  We reverse.